Brian P. Kinder (212332)
THE KINDER LAW GROUP, APC
19200 Von Karman Avenue, Fourth Floor
Irvine, California 92612
Telephone: (949) 216-3070
Facsimile: (949) 216-3074
Email: bkinder@tklglaw.com

Attorney for Plaintiff

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VIRTUALPOINT, INC., dba Captive Media, a California corporation,<br><br>　　　　　　Plaintiff,<br><br>　vs.<br><br>POARCH BAND OF CREEK INDIANS, dba PCI GAMING AUTHORITY, a federally-recognized Indian tribe; NATIONAL ARBITRATION FORUM, INC., a Minnesota corporation; and DOES 1 – 10,<br><br>　　　　　　Defendants. | Case No.:<br><br>**COMPLAINT FOR:**<br><br>1. Declaratory Judgment re Domain Name;<br>2. Anti-cybersquatting Consumer Protection Act (*15 U.S.C. § 1125(d)*);<br>3. Unfair Competition (*Cal. Bus. & Prof. Code § 17200 et seq.*);<br>4. Unfair Competition (*Common Law*);<br>5. Cancellation of Trademark Registrations (*15 U.S.C. §§ 1064, 1119*); and<br>6. Declaratory Judgment re UDRP Decision.<br><br>**DEMAND FOR JURY TRIAL** |

COMPLAINT

1  Plaintiff VirtualPoint, Inc., dba Captive Media ("Plaintiff"), by its attorney, for its
2  Complaint against Defendant Poarch Band of Creek Indians, dba PCI Gaming Authority, a
3  federally-recognized Indian tribe ("Defendant PCI"), Defendant National Arbitration Forum, Inc.,
4  a Minnesota corporation ("Defendant NAF"), and DOES 1 through 10, inclusive, hereby alleges
5  as follows:

**NATURE OF CASE**

1. As explained in detail below, when Defendant PCI acquired various WIND CREEK trademark registrations, it committed fraud on the U.S. Patent and Trademark Office by submitting a declaration under penalty of perjury that falsely asserted the term Wind Creek has "no geographic significance." Defendant PCI then used the fraudulently obtained registrations to seek the transfer of Plaintiff's domain name for windcreek.com (the "Domain Name") by filing a UDRP complaint against Plaintiff. Plaintiff has been ordered to transfer the Domain Name to Defendant PCI. Plaintiff now seeks to cancel Defendant PCI's fraudulently-obtained registrations as well as a declaratory judgement and order from this Court concerning Plaintiff's rightful ownership of the Domain Name. In addition, Plaintiff asserts various claims against Defendant PCI for the improper conduct. In granting Defendant PCI's UDRP transfer request, Defendant NAF issued a decision that falsely attributed certain statements to Plaintiff that jeopardize Plaintiff's future rights. As a result, Plaintiff also seeks a declaratory judgment and order from this Court requiring Defendant NAF to modify and/or redact the wording of the decision underlying the UDRP complaint.

**JURISDICTION AND VENUE**

2. Subject matter jurisdiction exists in this case pursuant to 28 U.S.C. § 1331, giving this Court original jurisdiction in a civil action raising a federal question under 28 U.S.C. § 1338(a), the Lanham Act, 15 U.S.C. § 1051, et seq., and the Anti-Cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d). Subject matter jurisdiction also exists in this case pursuant to 28 U.S.C. §§ 2201(a) and 2202, in that Plaintiff requests a Declaratory Judgment from this Court. Subject matter jurisdiction also exists in this case based on diversity of citizenship pursuant to 28 U.S.


THE KINDER LAW GROUP
A Professional Corporation

COMPLAINT                                    1

1  Code § 1332 (a), in that this is an action between citizens of different states and the amount in controversy exceeds $ 75,000, exclusive of interests and costs. This Court has supplemental jurisdiction over Plaintiff's related causes of action under 28 U.S.C. § 1367.

3. Venue is proper in this judicial district because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district. Accordingly, venue is proper in this district pursuant to 28 U.S.C. §1391(a)(2) (b) and (c) and 1400(a) and (b).

4. Venue is proper in this judicial district because this action arises out of activities within the Central District of California. The Court has personal jurisdiction over Defendant PCI because its activities occurred within and were targeted at this District and because Defendant PCI specifically consented to jurisdiction and venue in this District. Plaintiff is informed and believes that Defendant NAF regularly conducts and solicits business, engages in other forms of conduct, and derives substantial revenue from doing business in this judicial district. Moreover, a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district. Accordingly, venue is proper in this district pursuant to 28 U.S.C. § 1391 and 28 U.S.C. § 1400.

## PARTIES AND PERSONAL JURISDICTION

5. Plaintiff is a California corporation with its principal place of business in Irvine, California.

6. Upon information and belief, Defendant PCI is a federally-recognized Indian tribe, with a principal place of business at 5811 Jack Springs Road, Atmore, Alabama, 36502. This Court has personal jurisdiction over Defendant PCI because Defendant PCI has purposefully availed itself to this forum through demanding that Plaintiff cease use of the Domain Name and transfer of the same to Defendant. Additionally, by filing a complaint against Plaintiff with Defendant NAF, Defendant PCI specifically consented to personal jurisdiction with this Court pursuant to the Rules for Uniform Domain Name Dispute Resolution Policy (the "Rules") relating to administrative proceedings for the resolution of disputes under the Uniform Dispute Resolution Policy adopted by ICANN, as well as the supplemental rules of the provider administering the proceedings.

///

1  7. Upon information and belief, Defendant NAF is a Minnesota corporation with a principal place of business at 6465 Wayzata Blvd. Suite 500, Minneapolis, Minnesota 55426. This Court has personal jurisdiction over Defendant NAF because it conducts substantial business within this district related to the unlawful activities at issue in this Complaint. The harm suffered by Plaintiff flows directly from the business conducted by Defendant NAF within this district.

8. This Court has personal jurisdiction over Defendant NAF because Defendant NAF has sufficient contacts with the State of California and this judicial District subjecting it to the general and specific personal jurisdiction of this Court pursuant to Cal. Code Civ. Pro § 410.10. ") because Defendant NAF purposefully availed itself to this forum by issuing a erroneously worded decision and refusing to modify the same after Plaintiff's request, that misrepresents the true allegations of Plaintiff within through demanding that Plaintiff cease use of the Domain Name and transfer of the same to Defendant.

9. The true names and capacities of Defendant DOES 1 through 10, inclusive, whether individual, corporate, associate, or otherwise, are unknown to Plaintiff who therefore sue such Defendants by such fictitious names. Plaintiff will seek leave of this Court to amend this Complaint to show said Defendant's true names and capacities when same have been ascertained.

10. Plaintiff is informed and believes and upon such information and belief alleges that each of the Defendants named herein as DOES 1 through 10, inclusive, were, and are in some manner responsible for the actions, acts, and omissions herein alleged, and for the damage caused by the Defendants and are, therefore, jointly and severally liable for the damages caused to Plaintiff.

11. Plaintiff is informed and believes, and upon such information and belief, alleges that at all times mentioned herein, Defendant, was the agent, employee, and officer of each of the remaining Defendants and in doing the things herein alleged, were acting within the scope, course, and purpose of said agency or employment, and with permission and consent of each of the remaining Defendants.

12. Plaintiff is informed and believes and upon such information and belief alleges that each of the Defendants, including DOES 1 through 10, inclusive, were, and at all times herein mentioned, acting in concert and in conspiracy with each and every one of the named Defendants.

COMPLAINT 3

# FACTUAL BACKGROUND

13. Plaintiff is a premier website developer that has been in business for nearly two decades. Plaintiff's business focuses on designing and developing quality websites. These types of websites are referred to as "premier sites" and include such titles as such as www.DrivingTest.com, www.Certification.org, and others.

14. Plaintiff is the owner of the Domain Name (i.e., windcreek.com). As set forth in the WHOIS records (i.e., the database that maintains information about the registration of domain names), the domain name creation date for the Domain Name is January 14, 2003.

15. Plaintiff registered the Domain Name due to its obvious appeal as a geographic indicator as well as its ability to function in relation to wind energy. Among the domain names that Plaintiff owns are the following: www.windcatcher.com, www.windcircle.com, www.windriders.com, www.windview.com, www.windword.com, and of course www.windcreek.com.

16. At the time that Plaintiff registered the Domain Name, Plaintiff had no knowledge of the existence of Defendant PCI or Defendant PCI's use of any mark comprised of or incorporating the term Wind Creek. Plaintiff did not register the Domain Name with the intent to sell the Domain Name to Defendant PCI - or anyone else for that matter. Plaintiff has never initiated contact with Defendant PCI to sell the Domain Name, nor attempted to disrupt Defendant PCI's business by confusing consumers trying to find the Defendant's business by confusing consumers trying to find the defendant's website, or otherwise.

17. After registering the Domain Name, Plaintiff did not use the Domain Name in connection with any goods or services. The content at the website appearing at the Domain Name has never focused upon Defendant PCI, Defendant PCI's business, or Defendant PCI's competitors.

18. Based upon Plaintiff's review of the U.S. Patent and Trademark Office records pertaining to trademark applications filed by Defendant PCI, Plaintiff is informed and believes and on that basis alleges that Defendant PCI's earliest date of use of any mark comprised of or incorporating the term Wind Creek occurred in 2009. Thus, Defendant PCI's first use of any mark comprised of or incorporating the term Wind Creek does not pre-date the creation date of the Domain Name.

## THE CHALLENGED TRADEMARK REGISTRATIONS

19. Defendant PCI owns the following three (3) trademark registrations issued by the U.S. Patent and Trademark Office (hereinafter, collectively "the Challenged Registrations"):

| MARK | FILING DATE / NO.<br>REG. DATE / NO. | GOODS/SERVICES |
|---|---|---|
| WIND CREEK CASINO & HOTEL | Feb. 6, 2009<br>77/665,214<br><br>June 23, 2009<br>3,643,523 | Cabarets; Casinos; Entertainment services in the nature of comedy shows; Entertainment services in the nature of live musical performances; Wagering services (Class 41); Bar and restaurant services; Cafe and restaurant services; Catering for the provision of food and beverages; Catering of food and drinks; Cocktail lounge buffets; Cocktail lounges; Hotel and restaurant services; Hotel, bar and restaurant services; Providing social meeting, banquet and social function facilities; Restaurant, bar and catering services (Class 43). |
| ESCAPE AT WIND CREEK | Jan. 18, 2012<br>85/518,845<br><br>June 19, 2012<br>4,161,444 | Conducting and providing facilities for special events featuring casino and gaming contests and tournaments; Educational services, namely, conducting classes in the fields of culinary arts and distribution of training materials in connection therewith; Entertainment services, namely, casino gaming; Gaming services in the nature of casino gaming; Physical fitness studio services provided exclusively at Wind Creek Casino and Hotel, namely, providing exercise classes, body sculpting classes, and group fitness classes; Providing fitness and exercise facilities exclusively at Wind Creek Casino and Hotel; Providing physical fitness and exercise services exclusively at Wind Creek Casino and Hotel, namely, indoor cycling and yoga instruction (Class 41); Hotel services; Restaurant and hotel services (Class 43); Day spa services, namely, nail care, manicures, pedicures and nail enhancements; Health spa services for health and wellness of the body and spirit offered at a health club facility; Health spa services for health and wellness of the body and spirit, namely, providing massage, facial and body treatment services, cosmetic body care services, (Class 45). |
| WIND CREEK | Sept. 11, 2013<br>86/061,732<br><br>Feb. 18, 2014<br>4,485,354 | Casinos; Entertainment services, namely, casino gaming; Gambling services; Gaming services in the nature of casino gaming (Class 41); Hotel accommodation services; Hotel services; Hotel, bar and restaurant services; Hotel, restaurant and catering services (Class 43). |

20. During the prosecution of a trademark application, the U.S. Patent and Trademark Office requires an applicant to disclose any geographic significance of the underlying mark. See

COMPLAINT     5

Trademark Manual of Examination Procedure ("TMEP") § 1210 et seq.; see also 37 C.F.R. §2.61(b). The reason for the requirement stems from the underlying policy of prohibiting a person from claiming exclusive rights to a merely geographic term unless and until that person has made such extensive use that it acquires "secondary meaning." See 15 U.S.C. § 1052(e)-(f); see also TMEP § 1212. As a result, until a person has made such extensive use, anyone who adopts a merely geographic term for their mark assumes the risk that others will be entitled to also make fair use of such terms.

21. Prior to obtaining the Challenged Registrations, Defendant PCI made no fewer than ten (10) failed attempts to register marks comprised of and/or incorporating the term WIND CREEK. During Defendant PCI's prosecution of those ten (10) failed applications, the Examining Attorney at the U.S. Patent and Trademark Office appears to have repeatedly questioned whether the term WIND CREEK had any geographic significance. It appears that in response to U.S. Patent and Trademark Office's inquiries, Defendant PCI denied that the term WIND CREEK had an geographic meaning. As a result, the Examining Attorney entered Examiner's Amendments into the records stating, "The term WIND CREEK had no meaning other than a trademark significance." Defendant PCI subsequently abandoned all of these ten (10) prior applications and each is presently identified by the U.S. Patent and Trademark Office as being "Dead."

22. On February 6, 2009, Defendant PCI then applied to register the first of the Challenged Registrations. In the trademark application, Defendant PCI stated, "WIND CREEK appearing in the mark has no significance in the relevant trade or industry or as applied to the goods/services listed in the application, no geographical significance, nor any meaning in a foreign language." In addition to the foregoing, Defendant PCI stated,

> "The undersigned, being hereby warned that willful false statements and the like so made are punishable by fine or imprisonment, or both, under 18 U.S.C. Section 1001, and that such willful false statements, and the like, may jeopardize the validity of the application or any resulting registration, declares that he/she is properly authorized to execute this application on behalf of the applicant; he/she believes the applicant to be the owner of the trademark/service mark sought to be registered, or, if the application is being filed under 15 U.S.C. Section 1051(b), he/she believes applicant to be entitled to use such mark in commerce; to the best of his/her knowledge and belief no other person, firm, corporation, or association has the right to use the mark in commerce, either in the identical form thereof or in such near resemblance thereto as to be likely, when used on or in connection

   with the goods/services of such other person, to cause confusion, or to cause mistake, or to deceive; and that all statements made of his/her own knowledge are true; and that all statements made on information and belief are believed to be true."

23. Defendant PCI is located in the State of Alabama. Wind Creek is the name of the largest State Park in Alabama. Indeed, according to Alabama State Parks, Wind Creek State Park is not only the largest State Park in Alabama, but it is the largest state-owned campground in the entire United States. As shown in the Google® map screen capture below, Wind Creek State Park in Alabama is located in and around a large body of water identified as Wind Creek.



24. As shown in the Google® map screen capture below, Defendant PCI's casino is located just south of Wind Creek State Park. On that basis, Plaintiff alleges that Defendant PCI concealed the geographic significance of Wind Creek from the U.S. Patent and Trademark Office. As a result, the Challenged Registrations are subject to cancellation on grounds that Defendant PCI committed fraud on the U.S. Patent and Trademark Office in obtaining the registrations. On information and belief, Defendant PCI misrepresented the true facts to the U.S. Patent and Trademark Office because Defendant PCI believed that the U.S. Patent and Trademark Office



COMPLAINT         7

1  would have refused registration to Defendant PCI's mark on grounds that WIND CREEK is
2  merely geographically descriptive.



19  25. After Defendant PCI obtained the registration stemming from the February 6, 2009
20  application, Defendant PCI then cited to the earlier registration in order to obtain each of the other
21  two of the Challenged Registrations. As a result, each of the resulting registrations is likewise
22  obtained through Defendant PCI's intentional misrepresentation concerning the geographic nature
23  (or rather a lack thereof) of the term WIND CREEK.

24  26. In addition to the largest State Park near Defendant PCI, there are also numerous streets
25  and other geographic destinations throughout the United States that are associated with the
26  geographic term Wind Creek. Among the more prominent geographic locations are those located
27  in Sacramento, California; Fort Worth, Texas; and Kingwood, Texas, among others. Within these
28  individual regions, there are unquestionably camping facilities, lodging facilities, motels and



COMPLAINT                                         8

1  hotels.  Therefore, any reference to such facilities in wind creek could not refer uniquely to
2  Defendant PCI.

3     27. In addition, and as expected with a merely geographic term, there are many businesses
4  throughout the United States that incorporate the term Wind Creek in the name, including,
5  apartments that include Wind Creek in the name, golf courses that include Wind Creek in the
6  name, flying disc parks that include Wind Creek in the name, and so on.  Thus, Plaintiff alleges
7  that the term unquestionably has a merely geographic significance and does not connote any one
8  particular source.

9     28. Additionally, there are numerous uses of the phrase "wind creek" in other domain names
10 and by entities spread throughout the United States and abroad.  Among the active websites not
11 affiliated with the Defendant PCI are the following:

| REFERENCE | USE |
| --- | --- |
| www.windcreekinc.com | Construction company |
| www.windcreekfarm.com | Horse breeders |
| www.windcreekhelicoptercharter.com | Helicopter services |
| www.windcreekstatepark.com | Recreational vehicle (RV) park |
| www.windcreekapartments.com | Apartment complex |
| www.windcreekkennels.com | Dog kennel |
| http://www.82fss.com/windcreekgolfcourse.html | Golf course |
| http://www.catomaoutdoor.com/Catalog/ProductInfo | Tents |
| http://www.apartmentguide.com/apartments/California/Sacramento/Windcreek-Apartments/88215/ | Apartments |
| www.windcreeksubdivision.com<br>www.windcreeksubdivision.net | Homeowner's association |
| www.windcreek.net | Parked page |
| www.windcreek.org | Parked page |
| www.windcreekfire.com | Parked page |
| www.windcreekstudio.com | Parked page |
| www.windcreekstudios.com | Parked page |
| www.windcreekranch.com | Parked page |
| www.wind-creek.com | Parked page |
| http://www.alapark.com/wind-creek-state-park-campground | Wind Creek State Park |

   29. As a result of the above, Plaintiff alleges that Defendant PCI cannot claim exclusive rights to use of the term WIND CREEK as a domain name, trademark or otherwise.

/ / /

/ / /



COMPLAINT                                    9

## DEFENDANT PCI'S ACTIONABLE ACTIVITIES AND
## CREATION OF A JUSTICIABLE CONTROVERSY

30. Defendant PCI offers hotel, restaurant, spa and gaming services in casinos under the marks in the Challenged Registrations.

31. Plaintiff has not used the Domain Name for goods and services related to hotel, restaurant, spa or gaming services. Plaintiff has not used the Domain Name to offer any goods or services that are related to or compete with those of Defendant, nor for any other illegitimate purpose.

32. Regardless, after Defendant PCI obtained the Challenged Registrations through fraud, an employee of Defendant PCI (Caitlin Dingle) contacted Plaintiff via email dated June 11, 2013 and inquired about purchasing the Domain Name from Plaintiff. Plaintiff responded indicating that the Domain Name was not for sale since it was to be utilized for a specific purpose. Following that email exchange, there were no further communications between the parties.

33. Over two years later, on September 30, 2015, Plaintiff received an email from Defendant NAF attaching an administrative complaint that had been filed by Defendant PCI against Plaintiff. The complaint alleged that the Domain Name is confusingly similar to Defendant's trademark, that Plaintiff had no legitimate interests or rights to the Domain Name and that Plaintiff had registered and used the Domain Name in bad faith. The complaint sought transfer of the Domain Name from Plaintiff to Defendant.

34. Plaintiff alleges that Defendant PCI and/or Defendant PCI's legal counsel intentionally manipulated the evidence submitted in support of the UDRP Complaint. Specifically, Plaintiff did not have an active website corresponding to the Domain Name; instead, Plaintiff merely had the Domain Name parked with a parking service that functioned in a geographical manner. The content appearing on the site corresponding to the Domain Name was determined solely by the parking service through the application of a proprietary algorithm.

35. With regard to Plaintiff's parked site, Plaintiff alleges that the categories displayed were consistent with those one would expect to be associated with a geographic term such as Wind Creek. By way of example, the algorithm behind the parking service triggered categories relating

to tourism and tourist types of activities – i.e., hotels, car rentals, flights, and the like. The parked service did not display any category relating to "casinos" or "gambling" anywhere on the site.

36. Regardless, Defendant PCI and/or Defendant PCI's legal counsel submitted as Exhibit 7 to the UDRP complaint a document that purported to show that the parking service for Plaintiff's site solicited original references to "Wind Creek Casino" thereon. The evidence, however, was entirely false and was the result of deceptive conduct. Plaintiff's unaltered site corresponding to the Domain Name did not show the words Wind Creek Casino anywhere and the only reason that the words appeared in Exhibit 7 was attributable entirely to Defendant PCI and/or Defendant PCI's legal counsel's deceptive conduct.

37. The deceptive conduct was not readily transparent, but was reflected in the url address at the top of the page displayed in Exhibit 7. Specifically, the reason that "Wind Creek Casino" appeared on the document was due to the fact that Defendant PCI and/or Defendant PCI's legal counsel manually entered the phrase into the search box.

38. Despite the foregoing, Defendant PCI prevailed in the UDRP and Plaintiff was ordered to transfer the Domain Name to Defendant PCI. Plaintiff refuses to transfer its rightful property to the Defendant PCI. Administrative decisions under the UDRP are subject to de novo review by this Court. As a result, an actual, substantial and immediate controversy exists, justifying the declaratory relief that Plaintiff seeks.

## COUNT I: DECLARATORY RELIEF

(Domain Name; Against Defendant PCI)

39. Plaintiff realleges the foregoing paragraphs of this Complaint.

40. Plaintiff is the rightful owner of the Domain Name and both registered and used the Domain Name in good faith without intent to sell the Domain Name to Defendant PCI. Plaintiff had no intention of confusing any of Defendant PCI's customers or diverting any traffic from Defendant PCI's websites.

41. "Wind Creek" is commonly used and a merely geographically descriptive term. Many businesses use Wind Creek in their names, trademarks, and domain names. Defendant has no

1  exclusive right to the use of the term "Wind Creek" either as a trademark, a domain name, or
2  otherwise.
3      42. Plaintiff believed and had reasonable grounds to believe that the registration and its use of
4  the Domain Name was and is lawful due to the obvious geographic appeal on the surface as well
5  as the Domain Name's ability to function in relation to wind energy.
6      43. A justiciable controversy exists between Plaintiff and Defendant PCI.
7      44. To resolve this actual controversy, Plaintiff seeks a declaration and judgment that it is not
8  infringing Defendant's trademark rights, that Plaintiff is not violating unfair competition laws
9  and/or the ACPA, that its registration and use of the Domain Name is in good faith use, that
10 Plaintiff has a legitimate interest in, and is the rightful owner of, the Domain Name, and injunctive
11 relief to retain ownership of the Domain Name.

## COUNT II: ANTI-CYBERSQUATTING CONSUMER PROTECTION ACT

(15 U.S.C. § 1125(d); Against Defendant PCI)

15     45. Plaintiff realleges the foregoing paragraphs of this Complaint.
16     46. Plaintiff is the rightful owner of the Domain Name and both registered and used the
17 Domain Name in good faith without intent to sell the Domain Name to Defendant PCI. Plaintiff
18 had no intention of confusing any of Defendant.
19     47. Plaintiff's Domain Name has been ordered to be transferred under a policy implemented
20 by a Registrar as described in 15 U.S.C. § 1114(2)(D)(ii)(II).
21     48. Defendant PCI was the entity that prompted the Domain Name to be transferred and
22 therefore had notice of the action.
23     49. Plaintiff's use and/or registration of the domain name was/is not unlawful.
24     50. Plaintiff is informed and believes and on that basis alleges that Defendant PCI sought the
25 transfer of the Domain Name in bad faith knowing that the Challenged Registrations were
26 procured through fraud.
27 / / /
28 / / /

51. Plaintiff is informed and believes and on that basis alleges that Defendant PCI sought the transfer of the Domain Name in bad faith through the submission of deceptive, misleading, and/or intentionally manipulated and modified evidence.

52. Plaintiff's remedy at law is not adequate to compensate for the injuries inflicted by Defendant PCI. Accordingly, Plaintiff is entitled to preliminary and permanent injunctive relief pursuant to 15 U.S.C. § 1116.

53. By reason of Defendant PCI's acts alleged herein, Plaintiff is entitled to recover actual damages, costs of the action, and/or statutory damages under 15 U.S.C. § 1117, on election by Plaintiff, in an amount of one hundred thousand dollars ($100,000).

54. This is an exceptional case making Plaintiff eligible for an award of attorneys' fees under 15 U.S.C. § 1117.

## COUNT III: UNFAIR COMPETITION

(Cal. Bus. & Prof. Code § 17200; Against Defendant PCI)

55. Plaintiff realleges the foregoing paragraphs of this Complaint.

56. Defendant's wrongful acts, as described in this Complaint, are unfair, deceptive and illegal, and have caused damage to Plaintiff and injury to its business, in violation of section 17200 et seq. of the California Business and Professions Code.

57. As a result of Defendant's past and continued wrongful acts, Plaintiff has incurred damages in an amount to be proved at trial, including compensation for Plaintiff's time, effort and attorneys' fees in defending against Defendant's baseless claims.

## COUNT IV: UNFAIR COMPETITION

(Cal. Common Law; Against Defendant PCI)

58. Plaintiff realleges the foregoing paragraphs of this Complaint.

59. Defendant filed an administrative UDRP action contending that Plaintiff used the Domain Name in violation of trademark and unfair competition laws, and seeking transfer of the Domain Name.

60. Defendant relied upon the Challenged Registrations as Defendant's basis for the UDRP knowing that Defendant PCI had acquired the Challenged Registrations through fraud on the U.S. Patent and Trademark Office.

61. Defendant PCI also intentionally manipulated the evidence that Defendant PCI submitted in support of the UDRP against Plaintiff.

62. Defendant PCI's wrongful conduct and baseless accusations of infringement have caused harm to Plaintiff, have caused Plaintiff to expend significant sums of money defending against Defendant PCI's allegations, and have created a cloud on Plaintiff's title to the Domain Name.

63. As a result of Defendant PCI's wrongful acts, Plaintiff has incurred damages in an amount to be proved at trial, including compensation for Plaintiff's time, effort and attorneys' fees in defending against Defendant's baseless claims.

## COUNT V: CANCELATION OF TRADEMARK REGISTRATIONS

(15 U.S.C. §§ 1064, 1119; Against Defendant PCI)

64. Plaintiff realleges the foregoing paragraphs of this Complaint.

65. Plaintiff is informed and believes and on that basis alleges that Defendant PCI made knowingly false material representations in their submissions to the USPTO with the intent to deceive the USPTO.

66. Based on these knowingly false material misrepresentations which were made with the intent to deceive the USPTO, the Challenged Registrations should be cancelled.

## DEFENDANT NAF'S ACTIVITIES CREATING A JUSTICIABLE CONTROVERSY

67. The decisions issued in UDRP case are structured in a very specific manner. First, the decision lays out the allegations of the Complainant, followed by the allegations of the Respondent, and then a discussion of the application of the law to the allegations. In the decision in the Wind Creek UDRP, Defendant NAF attributes factual assertions in the Respondent allegations section that were not stated by either Respondent (i.e., Plaintiff) or Complainant (i.e., Defendant PCI). Specifically, the decision states that Respondent (i.e., Plaintiff) contended that



COMPLAINT 14

VirtualPoint, Inc. is a "generic domain name reseller." Plaintiff did not make any such contention and there is nothing in the records to corroborate this statement. Accordingly, the decision is simply false and jeopardizes Plaintiff's rights with respect to future UDRP actions in that UDRP decisions have tipped in favor of the complainant where the respondent was found to be a generic domain name reseller.

68. In addition to the above, the decision also contained what is clearly a typographical error, but one that could have damaging effect to Plaintiff in the future. Specifically, the decision states that Plaintiff was using a "privacy service" when in fact Plaintiff does not use any privacy service and what was clearly intended to be stated in the decision was the term "parking service." Indeed, Plaintiff would not use a privacy service because many UDRP decisions have found the use of a privacy service as being a factor in finding bad faith registration and use of a domain name. Therefore, a decision that states that Plaintiff uses privacy services, which is false, is likely to be used in the future by other third parties and panelists to the detriment of Plaintiff.

69. On November 23, 2015, Plaintiff contacted Defendant NAF and requested that the decision be modified. On November 24, 2015, Defendant NAF denied Plaintiff's request on grounds that Supplemental Rule 16 prohibited Defendant NAF from modifying the decision. Accordingly, on December 3, 2015, Plaintiff again contacted Defendant NAF and requested that the decision at a minimum be redacted pursuant to very Supplemental Rule that Defendant NAF relied upon to deny the earlier request. Specifically, Supplemental Rule 16 states, "(b) Except if the Panel determines otherwise (see Paragraph 4(j) of the Policy), the Provider shall publish the full decision and the date of its implementation on a publicly accessible web site." Further, Paragraph 4(j) of the Policy states, "Notification and Publication. The Provider shall notify us of any decision made by an Administrative Panel with respect to a domain name you have registered with us. All decisions under this Policy will be published in full over the Internet, except when an Administrative Panel determines in an exceptional case to redact portions of its decision."

70. Based upon the above, Plaintiff requested that Defendant NAF exercise the discretion to either not publish the case or, at a minimum, to redact the obviously erroneous and harmful

COMPLAINT 15

statements made therein. On December 4, 2015, Defendant NAF refused to exercise the discretion.

## COUNT VI: DECLARATORY JUDGMENT

(UDRP Decision; Against Defendant NAF)

71. Plaintiff realleges the foregoing paragraphs of this Complaint.

72. A justiciable controversy exists between Plaintiff and Defendant NAF.

73. To resolve this actual controversy, Plaintiff seeks a declaration and judgment requiring Defendant NAF to either modify, take down or redact the decision consistent with the above.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

a. A declaration that Defendant PCI committed fraud on the USPTO in the submissions to the USPTO for trademark registrations Nos. 3,643,523; 4,161,444; and 4,485,354; that the registrations are invalid and that the registrations be ordered cancelled.

b. A declaration that Plaintiff is not infringing the trademark rights of Defendant;

c. A declaration that Plaintiff is not violating unfair competition law;

d. A declaration that Plaintiff is not violating the ACPA;

e. A declaration that Plaintiff registered and used the Domain Name in good faith and is the rightful registrant of the Domain Name;

f. A permanent injunction to enjoin Defendant from interfering with Plaintiff's use and registration of the Domain Name, including attempting to place it on "hold" status, cancel or transfer it, or from otherwise disturbing Plaintiff's lawfully obtained Domain Name.

g. A finding awarding Plaintiff monetary compensation for damages sustained by Defendant's wrongful actions as alleged in this Complaint;

h. A finding awarding Plaintiff statutory damages consistent with this Complaint;

i. For costs of suit incurred herein;

j.  An award of reasonable attorneys' fees and expenses; and

k.  Such other and further relief as the Court may deem just and proper.

Dated:  December 4, 2015    THE KINDER LAW GROUP, APC

By: _____
Brian P. Kinder, Esq.
19200 Von Karman Avenue, Fourth Floor
Irvine, California 92612
O: (949) 216-3070
F: (949) 216-3074
E: bkinder@tklglaw.com
Attorneys for VirtualPoint, Inc.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all issues triable by jury.

Dated: December 4, 2015     THE KINDER LAW GROUP, APC

By: _____
Brian P. Kinder, Esq.
19200 Von Karman Avenue, Fourth Floor
Irvine, California 92612
O: (949) 216-3070
F: (949) 216-3074
E: bkinder@tklglaw.com
Attorneys for VirtualPoint, Inc.

COMPLAINT                                18