**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**SOUTHERN DIVISION**

**VIRTUALPOINT, INC.,**

**Plaintiff,**

**v.**

**POARCH BAND OF CREEK INDIANS and NATIONAL ARBITRATION FORUM, INC.,**

**Defendants.**

**Case No.: SACV 15-02025-CJC(KESx)**

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**

## I. INTRODUCTION

Plaintiff Virtualpoint, Inc. ("Virtualpoint") brings this action against Defendant the Poarch Band of Creek Indians ("PBCI") for violations of the Anti-Cybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1114, cancellation of trademarks

pursuant to 15 U.S.C. §§ 1064 and 1119, and declaratory relief. (*See* Dkt. 34 ["Second Amended Compl. ("SAC")].) Before the Court is PBCI's motion to dismiss or strike portions of the SAC. (Dkt. 42.) For the following reasons, PBCI's motion is GRANTED.[1]

## II. BACKGROUND

Virtualpoint is a "website developer" who owns a number of domain names, including the domain name at issue in this case: <windcreek.com>. (SAC ¶¶ 14–15.) PBCI is an Indian tribe who owns three trademarks containing the term WIND CREEK. (*Id.* ¶ 20.) The trademarks chiefly pertain to PBCI's operation of the "Wind Creek Casino & Hotel." (*Id.*)

PBCI wants to own the <windcreek.com> domain name so as to more effectively advertise its casino and hotel. In 2013, PBCI contacted Virtualpoint to see if the domain name was for sale. (SAC ¶ 33.) Virtualpoint said it was not. (*Id.*) PBCI subsequently filed an administrative complaint before the National Arbitration Forum ("NAF") pursuant to the Uniform Domain Resolution Policy ("UDRP"),[2] seeking to have

---

[1] Having read and considered the papers presented by the parties, the Court finds this matter appropriate for disposition without a hearing. *See* Fed. R. Civ. P. 78; Local Rule 7-15. Accordingly, the hearing set for July 18, 2016 at 1:30 p.m. is hereby vacated and off calendar.

[2] As a court in the Western District of Washington has explained,

> The UDRP is a policy adopted by the Internet Corporation for Assigned Names and Numbers ("ICANN"), which administers domain name registration matters. The UDRP is incorporated by reference into contractual agreements between registrants of domain names and the party accepting the registration. When third parties challenge a registration, they may seek arbitration under the UDRP even though they are not parties to the registration contract.

*Stenzel v. Pifer*, No. C06-49Z, 2006 WL 1419016, at *1 (W.D. Wash. May 22, 2006).

ownership of the domain transferred to it from Virtualpoint. (SAC ¶ 34.) PBCI's UDRP complaint alleged that <windcreek.com> was confusingly similar to its registered trademarks, that Virtualpoint had no rights in the domain, and that Virtualpoint was operating the domain in bad faith, thereby entitling PBCI—under the terms of the UDRP—to acquire ownership of the domain. (Dkt. 42-3 Exh. 1 ["UDRP Compl."] at 5–8.)[3]

NAF appointed a neutral to hear the dispute between PBCI and Virtualpoint. The neutral considered submissions from the parties and issued a decision on November 13, 2015, finding that "the disputed domain name is confusingly similar to [PBCI's] earlier trademark," that Virtualpoint "failed to establish that it has rights or legitimate interests in the disputed domain name," and that Virtualpoint registered and was using the domain "in bad faith." (Dkt. 22-3 Exh. 3 ["Decision"] at 33; 35–37.) Accordingly, the neutral ordered that the <windcreek.com> domain name be transferred from Virtualpoint to PBCI. (*Id.* at 38.)

Understandably unhappy with that outcome, Virtualpoint filed this action. Its First Amended Complaint ("FAC"), filed March 25, 2016, asserted claims for declaratory relief, injunctive relief, violations of the ACPA, and trademark cancellation. (*See* Dkt. 13 ["FAC"].) On April 14, 2016, PBCI moved to dismiss the FAC. It argued that as an Indian tribe, it had tribal sovereign immunity from each of Virtualpoint's claims. (*See* Dkt. 22.) On May 10, 2016, this Court granted PBCI's motion. (Dkt. 29 ["May 10 Order"].)

---

[3] The UDRP provides that an arbitrator may transfer a domain name upon hearing and adjudicating a dispute in which a complainant can demonstrate that a domain name is "identical or confusingly similar to a trademark or service mark in which the [c]omplainant has rights," that the respondent has "no rights or legitimate interests in respect of the domain name," and that "the domain name should be considered as having been registered and being used in bad faith." (Smith Decl. Exh. 8 ["UDRP Policy"] at 90–91; 93.)

The Court's May 10 Order explained that by engaging in the UDRP proceedings, PBCI had partially waived its tribal sovereign immunity. This was true because the UDRP Rules require a UDRP complainant to "submit, with respect to any challenges to a decision in the administrative proceeding canceling or transferring the domain name, to the jurisdiction" of an agreed-upon court. (Dkt. 22-3 Exh. 9 ["UDRP Rules"] ¶ 3(xii).) In this case, PBCI's UDRP complaint provided that it consented to jurisdiction "with respect to any challenges to a decision in the administrative proceeding to the jurisdiction of . . . the United States District Court for the Central District of California." (UDRP Compl. at 9.)

Noting that conditional limitations on waivers of tribal sovereign immunity should be "strictly construed and applied," *Missouri River Servs., Inc. v. Omaha Tribe of Nebraska*, 267 F.3d 848, 852 (8th Cir. 2001), the Court reasoned that the "only relevant inquiry" was whether the causes of action asserted by Virtualpoint in the FAC qualified as "a challenge the neutral's decision to transfer the domain name" to PBCI. (May 10 Order at 7.) The Court observed that such challenges are usually made under 15 U.S.C. § 1114(2)(D)(v), which provides,

> A domain name registrant whose domain name has been suspended, disabled, or transferred under a policy [such as the UDRP] may, upon notice to the mark owner, file a civil action to establish that the registration or use of the domain name by such registrant is not unlawful under this chapter. The court may grant injunctive relief to the domain name registrant, including the reactivation of the domain name or transfer of the domain name to the domain name registrant.

But Virtualpoint had not brought a cause of action under § 1114(2)(D), so the Court proceeded to

> examine the causes of action that the FAC d[id] include to see whether those causes of action seek substantially the same remedies as § 1114 and can

> therefore be construed as challenges to the UDRP proceeding or if, by contrast, they concern matters beyond the scope of the UDRP proceeding.

(May 10 Order at 9.) The Court concluded that none of Virtualpoint's causes of action could be construed as challenges to the UDRP decision because each sought "relief beyond what [PBCI's] waiver" of its tribal sovereign immunity "would permit." (*Id.* at 10.) Rather than seeking review of the UDRP's decision to transfer ownership of the domain from Virtualpoint to PBCI, the FAC requested that the Court "adjudicate[] issues that go beyond those considered by the neutral in the UDRP proceedings." (*Id.* at 11.) The Court concluded that tribal sovereign immunity barred it from having subject-matter jurisdiction to consider those issues, and it therefore dismissed the FAC's claims for declaratory relief, violations of the ACPA, and trademark cancellation. (*Id.* at 12.) The Court granted Virtualpoint leave to submit an amended complaint which "appropriately mount[ed] a challenge to the underlying UDRP proceeding." (*Id.*)

On May 31, 2016, Virtualpoint submitted its SAC. The SAC asserts three causes of action. The first, for declaratory relief, seeks a declaration that <windcreek.com> is "not identical or confusingly similar" to PBCI's trademarks, that Virtualpoint "has rights or legitimate interests" in <windcreek.com>, that Virtualpoint registered and was using <windcreek.com> in good faith, and that Virtualpoint is the rightful owner of <windcreek.com>. (SAC ¶ 45.) This first cause of action also seeks an injunction permitting Virtualpoint to retain ownership of <windcreek.com>.

The SAC's second cause of action is for violations of 15 U.S.C. § 1114. It seeks injunctive relief under § 1114(2)(D)(v), which provides that a court may enjoin the decision of a UDRP panel canceling or transferring a domain. (SAC ¶ 57). It also seeks damages pursuant to § 1114(2)(D)(iv), which provides,

> If a registrar, registry, or other registration authority [like a neutral applying UDRP Rules] takes an action . . . based on a knowing and material

> misrepresentation by any other person that a domain name is identical to, confusingly similar to, or dilutive of a mark, the person making the knowing and material misrepresentation shall be liable for any damages, including costs and attorney's fees, incurred by the domain name registrant as a result of such action. The court may also grant injunctive relief to the domain name registrant, including the reactivation of the domain name or the transfer of the domain name to the domain name registrant.

(*See* SAC ¶ 58.) Virtualpoint alleges that PBCI is liable to it under this section because PBCI made certain false representations to the neutral regarding its trademark registrations and the similarities between its registered marks and <windcreek.com>. (SAC ¶¶ 48, 53–56.)

The SAC's third cause of action is again for cancellation of trademark registrations pursuant to 15 U.S.C. §§ 1064 and 1119. Although the Court's May 10 Order described this cause of action as "the clearest example of a claim that is not a 'challenge[] to the decision in the administrative proceeding," since the UDRP neutral "explicitly refused to take up" the question whether PBCI's trademarks should be cancelled, (May 10 Order at 10), Virtualpoint nonetheless elected to reassert it.

On June 17, 2016, PBCI again moved to dismiss, this time targeting only the SAC's second and third causes of action. PBCI's motion acknowledges that PBCI waived its tribal sovereign immunity as to a challenge to the UDRP neutral's decision to transfer ownership of <windcreek.com>, and it concedes that the first cause of action and most of the second cause of action mount such a challenge. However, PBCI insists that while this Court has subject-matter jurisdiction to entertain an action under § 1114(2)(D)(v) for injunctive relief, it lacks subject-matter jurisdiction to hear Virtualpoint's claim for damages under § 1114(2)(D)(iv). This is so, PBCI says, because the question whether PBCI made any material misrepresentations to the neutral that might subject it to liability under § 1114(2)(D)(iv) is not itself a "challenge[] to a

decision in the administrative proceeding canceling or transferring the domain name." *See* UDRP Rules ¶ 3(xii). And PBCI also argues that for the reasons set forth in the Court's May 10 Order, the Court lacks subject-matter jurisdiction over the trademark cancellation claim. Virtualpoint opposed PBCI's motion.

## III. DISCUSSION

### A. Tribal Sovereign Immunity

"Tribal sovereign immunity protects Indian tribes from suit absent express authorization by Congress or clear waiver by the tribe." *Pistor v. Garcia*, 791 F.3d 1104, 1110 (9th Cir. 2015) (quoting *Cook v. AVI Casino Enter.*, 548 F.3d 718, 725 (9th Cir. 2008). The issue of tribal sovereign immunity is "quasi jurisdictional," *Alto v. Black*, 738 F.3d 1111, 1125 (9th Cir. 2013), and Federal Rule of Civil Procedure 12(b)(1) is the "proper vehicle for invoking sovereign immunity from suit," *Pistor*, 791 F.3d at 1111.

When a tribe moves to dismiss a suit on the ground of sovereign immunity, "the party asserting subject matter jurisdiction"—here, Virtualpoint—"has the burden of proving its existence, i.e. that immunity does not bar the suit." *Pistor*, 791 F.3d at 1111 (citing *Miller v. Wright*, 705 F.3d 919, 923 (9th Cir. 2012)). Crucially, although tribes may expressly waive their sovereign immunity, there exists a "strong presumption against waiver of tribal sovereign immunity," *Demontiney v. U.S.*, 255 F.3d 801, 811 (9th Cir. 2001), and when a tribe does waive its immunity and consent to suit, "any conditional limitation it imposes on that consent" should be "strictly construed and applied," *Missouri River Servs.*, 267 F.3d at 852. A tribe's waiver of sovereign immunity therefore may be limited, and a partial waiver may not necessarily encompass matters that are related to the subject of the waiver, "even if those matters arise from the same set of underlying facts." *McClendon v. U.S.*, 885 F.2d 627, 630 (9th Cir. 1989).

**B. Trademark Cancellation**

As the Court held in its May 10 Order, Virtualpoint's claims for trademark cancellation do not fall within PBCI's waiver of its tribal sovereign immunity. That waiver, as discussed above, was carefully limited to "challenges to a decision in the administrative proceeding canceling or transferring the domain name." (UDRP Rules ¶ 3(xii); *see also* UDRP Compl. at 9 ("Complainant agrees to submit with respect to any challenges to a decision in the administrative proceeding to the jurisdiction [of the Central District]."). And although PBCI's trademarks were clearly *relevant* to the UDRP proceeding, the UDRP neutral firmly refused to decide whether PBCI's trademarks should be cancelled, agreeing with PBCI that such a determination was "well outside the scope of UDRP proceedings." (Decision at 35.) The UDRP neutral therefore did not make a "decision" on trademark cancellation that Virtualpoint could "challenge" here in federal court. The issue never arose.

Virtualpoint attempts to get around this difficulty in two ways. First, it says, PBCI "placed its trademark registrations at issue" when it filed the UDRP proceeding against Virtualpoint, since it was able to use its registrations—presumed valid by the UDRP neutral—in its UDRP case against Virtualpoint. (*See* Dkt. 45 at 2, 9.) Second, Virtualpoint says, if it had prevailed before the UDRP neutral, PBCI would have been forced to bring its own claim under § 1114(2)(D) to challenge the neutral's decision, to which Virtualpoint could have asserted a counterclaim for trademark cancellation.

Both of these arguments miss the mark. First, contrary to what Virtualpoint says, PBCI did not put its trademark registrations "at issue" before the UDRP neutral for the simple reason that trademark cancellation is well outside the scope of UDRP proceedings. A party cannot put something "at issue" before a tribunal if that tribunal has no power or jurisdiction to rule on what is supposedly "at issue" in the first place.

With regard to Virtualpoint's second argument, whether trademark validity could be asserted as a counterclaim if the sides were switched here is beside the point. The Ninth Circuit has "consistently held that a tribe's participation in litigation does not constitute consent to counterclaims asserted by the defendants in those actions." *McClendon*, 885 F.2d at 627. This is true even when the counterclaims "arise from the same set of underlying facts." *Id.* at 630. Instead, "a tribe's waiver of sovereign immunity may be limited to the issues *necessary to decide the action brought by the tribe*." *Id.* (emphasis added). Whether PBCI's trademarks should be cancelled was not a necessary issue in the action PCBI brought—the UDRP proceeding—because trademark cancellation was beyond the scope of the UDRP proceedings, and because the UDRP neutral managed to render a decision without considering the cancellation question. Virtualpoint is entitled to argue before this Court (on de novo review) that the UDRP neutral got it wrong, and that ownership of the domain name should remain with Virtualpoint. But it is not entitled to bring a claim against PBCI for trademark cancellation. *Cf. Navajo Nation v. Urban Outfitters, Inc.*, CIV No. 12-195 LH/LAM, 2014 WL 11511718, at *7 (D.N.M. Sept. 19, 2014) (dismissing, in a trademark infringement case brought by a tribe, a counterclaim for cancellation, since the counterclaim would bar the tribe from *ever* enforcing the trademark and therefore sought relief "clearly in excess" of what the tribe was seeking).

**C. Section 1114(2)(D)(iv)**

Section 1114(2)(D)(iv) provides that when a registration authority like the UDRP "takes an action . . . based on a knowing and material misrepresentation by any person that a domain name is identical to, confusingly similar to, or dilutive of a mark," the person making the misrepresentation "shall be liable for any damages, including costs and attorney's fees, incurred by the domain name registrant as a result of such an action." As with the trademark cancellation claim discussed above, the Court is persuaded that the

plain language of PBCI's waiver does not reach claims under § 1114(2)(D)(iv).  PBCI *only* waived its sovereign immunity as to "any challenges to a decision in the administrative proceeding canceling or transferring the domain name."  (UDRP Rules ¶ 3(xii).)  A claim for damages or attorney's fees based on misrepresentations in the UDRP proceeding is not a challenge to any decision made by the UDRP neutral, particularly not any decision "canceling or transferring the domain name."  It may be that Virtualpoint can persuade the Court that PBCI made misrepresentations to the UDRP neutral regarding similarities between PBCI's marks and <windcreek.com>.  And it may even be that those alleged misrepresentations persuade the Court to transfer the domain back to Virtualpoint pursuant to its injunctive powers under § 1114(D)(2)(v).  But Virtualpoint is not entitled to bring a § 1114(D)(2)(iv) claim based on those misrepresentations, as such a claim was never adjudicated before the UDRP neutral.

//
//
//
//
//
//
//
//
//
//
//
//
//
//
//

## IV. CONCLUSION

Tribal sovereign immunity in the context of a limited waiver is admittedly complex, and the lines demarcating what a tribe has waived its immunity to and what it has not quickly blur. Here, the Court finds that the matters raised by Virtualpoint's complaint to do not come within PBCI's very limited waiver before the UDRP neutral. And the Court also notes that it is guided by the Ninth Circuit's instruction that a "strong presumption" exists against waiver of tribal sovereign immunity. *Demontiney*, 255 F.3d at 811. Accordingly, the Court concludes that it only has subject-matter jurisdiction over Virtualpoint's claims for declaratory relief and its claim under § 1114(D)(2)(v), to transfer the <windcreek.com> domain back to Virtualpoint. Virtualpoint's causes of action for trademark cancellation and violations of 15 U.S.C. § 1114(D)(2)(iv) are DISMISSED WITH PREJUDICE.

DATED: July 11, 2016

CORMAC J. CARNEY
UNITED STATES DISTRICT JUDGE